# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL DAVIS, | |
| Plaintiff, | Civ. No. 18-17580 (KM) (MAH) |
| v. | |
| J___ SLAUGHTER et al., | OPINION |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Darryl Davis, is subject to commitment under the New Jersey Sexually Violent Predator Act at the Special Treatment Unit ("STU"), in Avenel, New Jersey. He is proceeding pro se with a civil rights complaint. This Court previously granted Mr. Davis leave to proceed *in forma pauperis*. (DE 2.)

This Court must now review the complaint, under 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, portions of the complaint will be dismissed without prejudice for failure to state a claim, and the remainder of the complaint will be permitted to proceed at this time.

## II. BACKGROUND AND ALLEGATIONS

The complaint lists as defendants STU Administrator J___ Slaughter, STU Associate Administrator Keisha Fisher, STU Assistant Superintendent C___ Raupp, STU search-plan coordinator, Major Colm Gamba, Sergeant T___ Orange, Senior Corrections Officer ("SCO")

___ Scatino, and Lieutenant John Doe. (Compl., DE 1, ¶¶ 7–27.) Mr. Davis explains that he is suing all defendants in their individual capacities, and is suing Administrator Slaughter, Associate Administrator Fisher, and Assistant Superintendent Raupp for injunctive relief in their official capacities. (*Id.* ¶¶ 28–29.)

Mr. Davis alleges that, on September 26, 2018, STU staff found contraband, which Mr. Davis identifies as a small amount of tobacco, in his cell. (DE 1 ¶ 32 & n.1.) He explains that he was immediately "pat searched" and then taken to the STU medical department, where a "BOSS chair" was used to conduct a non-intrusive search.[1] (*Id.* ¶ 33–34.) Mr. Davis was then taken to a different cell, where Sergeant Orange, accompanied by SCO Scatino, and another, unidentified officer, ordered Mr. Davis to strip for another search. (*Id.* ¶¶ 34–39.) He contends that, while he was compelled to completely disrobe for the strip search, he was in view of other STU residents. (*Id.* ¶ 39.)

Mr. Davis remained in that cell on temporary close custody ("TCC")[2] status for the next several days. Mr. Davis explains that, while he was in the TCC cell, he was deprived of all possessions except a change of clothes and set of sheets and was not allowed to shower, make telephone calls, or receive his prescribed sex-offender treatment. (*Id.* ¶¶ 41–43.) Mr. Davis alleges that he was informed on September 28, 2018, that he was cleared to return to general population and assigned specific programming to address inappropriate behavior. (*Id.* ¶ 45 & n.3.) Mr. Davis alleges that TCC status is not supposed to last more than 72 hours, and that, as he

---

[1] Mr. Davis explains that a "BOSS chair" is a "body orifice security scanner," which "positions the individual on it in such a way that any items hidden in various body cavities or clothing are detected." (DE 1 ¶ 33 n.2.)

[2] Temporary Close Custody entails "the removal of a resident from the general population, or other assigned status, with restriction to a room in a designated area for a period not to exceed 72 hours." N.J. Admin. Code § 10A:35-1.4.

approached that duration, around lunch time on September 29, 2018, he asked an unidentified sergeant when he would be released, but was told, "'[M]oves are up to the Lieutenant.'" (*Id.* ¶¶ 46–47.) He alleges that, around 5:30 p.m. the same day, he inquired again as to the timing of his release and that non-party Sergeant T___ Walker "emphatically responded that 'no one is moving today.'" (*Id.* ¶ 48.) Sergeant Orange apparently ordered Mr. Davis released from TCC at 8:00 a.m. the following day, 91 hours and 20 minutes after he was placed there. (*Id.* ¶ 50 & n.4.) Mr. Davis alleges that, around the same time, other STU residents were properly released from TCC within the 72-hour period. (*Id.* ¶ 51.)

Mr. Davis subsequently commenced this civil rights action. He alleges that Orange, Scatino, Gamba, and Lieutenant Doe violated his Fourth Amendment rights by submitting him to an improper strip search. (DE 1 ¶¶ 54–69.) He further contends that Gamba, Orange, and Doe violated various constitutional provisions by subjecting him to unduly prolonged TCC placement in contravention of facility regulations and while other, similarly situated residents were timely released. (*Id.* ¶¶ 81–103.) Mr. Davis alleges that Administrator Slaughter, Associate Administrator Fisher, and Assistant Superintendent Raupp should have known of these acts, yet failed to intervene, and thus claims they bear supervisory liability. (*See id.* ¶¶ 70–80, 104–115.) He contends that these events additionally violated his rights under the New Jersey Constitution and the statutorily established rights of mental patients. (*See id.* ¶¶ 116–125.) The complaint demands declaratory judgment, injunctive relief, compensatory damages, and punitive damages. (*Id.* ¶ 135.)

### III. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints when the plaintiff

is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.*

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). The Supreme Court has explained that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

Upon reviewing Mr. Davis's complaint, I conclude that outright, sua sponte dismissal of his claims under the United States Constitution and the New Jersey Constitution is not

warranted. These claims will be limited, however, insofar as Mr. Davis asserts insufficient bases to hold liable all of the defendants he has named.

Mr. Davis seeks to hold many of the named defendants liable through theories, either explicit or implicit, of supervisory liability. Generally, personal involvement by the defendant in the alleged constitutional violation is central to a civil rights claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). There are two potential theories of supervisory liability. Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

In Count I, Mr. Davis seeks to hold Major Gamba and Lieutenant Doe liable for an allegedly improper strip search on the basis that they bear responsibility for creating internal management procedures for searches and that they "knew or should have known that internal management procedures . . . provide[] that residents are not to be strip searched unless there is some suspicion that he is concealing a weapon, which may pose a threat to him or others." (*Id.* ¶¶ 57–59.) Mr. Davis alleges that these defendants either failed to implement proper procedures or failed to enforce them when his strip search occurred. (*Id.* ¶ 61.)

Similarly, in Count III, Mr. Davis alleges that Gamba and Doe are liable for his unduly delayed release from TCC because they "should have had in place procedures for timely releasing Plaintiff from TCC status and for their subordinates to follow." (DE 1 ¶¶ 99–100.) He alleges that, "on the relevant day Defendants Doe and Gamba took no action whatsoever to ensure Plaintiff was timely released." (*Id.*)

These allegations do not suffice to plead a supervisory-liability claim against Gamba or Doe. The complaint does not identify any specific policy, custom, or practice created by either of these defendants related to these incidents. Indeed, Mr. Davis seems unclear on whether these defendants created any policy. (Indeed, certain of the allegations, such as the allegation that other detained persons were released within 72 hours, imply that this was not an unconstitutional policy, but an isolated violation of a policy.) Nor does Mr. Davis make any factual allegation that ether Gamba or Doe directed a violation of his rights or knew of such violation and acquiesced in it. Instead, his claim against Gamba and Doe is premised entirely on the allegation that they had the authority to set policies. (*See* DE 1 ¶¶ 57–61, 100–101.) This attempt to hold them liable merely based on their supervisory authority clearly relies, at least implicitly, on the doctrine of *respondeat superior*. *See Munoz v. City of Union City*, 481 F. App'x 754, 760 (3d Cir. 2012).

Such liability is not permitted in civil rights actions. *See Chavarriaga*, 806 F.3d at 222. Accordingly, Counts I and III will be dismissed insofar as asserted as against Gamba and Doe.

Mr. Davis's supervisory-liability claims against Administrator Slaughter, Associate Administrator Fisher, and Assistant Superintendent Raupp, in Counts II and IV, must be dismissed for the same reasons. In each of these Counts, Mr. Davis makes conclusory assertions that these administrative defendants "knew or should have known" of constitutional violations of resident rights yet promulgated no corrective policy. (DE 1 ¶¶ 72–73, 105, 109–111.) He does not provide any plausible explanation as to why these defendants should have known of these alleged circumstances.[3] (*Id.* ¶¶ 72–73, 105.) Indeed, with regard to the TCC-release claim, he alleges that "the inaction and *ignorance* of Defendants Slaughter, Fisher, and Raupp is tantamount to failing to enforce any such rules and procedures that may be in place." (*Id.* ¶ 112 (emphasis added).) Mr. Davis generally alleges that these defendants were "in the best possible position" to have prevented his harm, but he does not identify any policy, action, or specific inaction, that allegedly contributed to his harm. (*Id.* ¶¶ 78, 110.) Although Mr. Davis quotes from cases stressing the importance of personal involvement for § 1983 liability, he has not adequately alleged any such involvement in his claims against Slaughter, Fisher, or Raupp. Counts II and IV are therefore dismissed upon screening for failure to state a claim.

In Count V, Mr. Davis seeks to hold Gamba, Doe, Slaughter, Fisher, and Raupp liable under the New Jersey Constitution. (*See* DE 1 ¶¶ 116–120.) This Count includes no additional factual allegations against these defendants, and does not plead adequate personal involvement

---

[3]  In support of his allegation that Slaughter, Fisher, and Raupp knew of problems with delayed release from TCC he cites to a complaint filed by another STU resident in this Court. As of the time of this writing, however, it seems the complaint in that action has not yet been served upon any defendant. Thus, it forms no basis for demonstrating knowledge of TCC-release issues by the STU administration. (*See Glenn v. Sims*, No. 18-13877.)

7

by them. Count V will therefore be dismissed as against defendants Gamba, Doe, Slaughter, Fisher, and Raupp.

Additionally, in Count VI, Mr. Davis seeks to hold all defendants liable for violating his rights under N.J. Stat. Ann. § 30:4-24.2, which codifies the rights of patients civilly committed for treatment of mental illnesses and developmental disabilities. Mr. Davis does not specifically identify the particular right that was violated. The issue is moot, however, as this statute does not apply to civilly committed sexually violent predators. N.J. Stat. Ann. § 30:4-27.34, which governs the "Custody, care and treatment of sexually violent predators," specifically provides,

> Notwithstanding the provisions of [N.J. Stat. Ann. § 30:4-24.2] or any other law to the contrary, the rights and rules of conduct applicable to a person subject to involuntary commitment as a sexually violent predator pursuant to [N.J. Stat. Ann. § 30:40-27.24 et seq.] shall be established by regulation promulgated jointly by the Commissioner of Human Services and the Commissioner of Corrections, in consultation with the Attorney General. The regulations promulgated undeN.r this subsection shall take into consideration the rights of patients as set forth in [N.J. Stat. Ann. § 30:4-24.2], but shall specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators. In developing these regulations, the commissioners shall give due regard to security concerns and safety of the residents, treatment staff, custodial personnel and others in and about the facility.

N.J. Stat. Ann. § 30:4-27.34(d). The New Jersey Superior Court, Appellate Division, has thus observed that "it is evident the Legislature has recognized that the rights of patients set forth in [N.J. Stat. Ann. §] 30:4-24.2 cannot be applied in blanket fashion when dealing with sexually violent predators." *In re Civil Commitment of R.X.K.*, No. A-3362-04T2, 2005 WL 3555711, at *4 (N.J. Super. Ct. App. Div. Dec. 30, 2005). Because the statutory rights of mental patients are not directly applicable to Mr. Davis, this claim will be dismissed.

The final count of the complaint seeks injunctive relief against the administrative defendants, Administrator Slaughter, Associate Administrator Fisher, and Assistant Superintendent Raupp, in their official capacities. (DE 1 ¶¶ 126–134.) This Count presents no distinct theory of liability and is more of a demand for relief than a distinct claim. As Mr. Davis has failed to adequately plead any plausible theory of liability against any of these administrative defendants, this Count will also be dismissed.

## V.  CONCLUSION

For the foregoing reasons, the claims in Counts I, III, and V against defendants Orange and Scatino will be permitted to proceed at this time. All other claims against all other defendants are dismissed without prejudice. An appropriate order follows.

DATED: June 19, 2019

KEVIN MCNULTY
United States District Judge